Good morning, if it pleases the Court, Joseph Zalmanowicz of Stonel's Zalmanowicz, representing the plaintiff, appellant, BAT LLC, and with me to my left is Elihan, co-counsel for BAT LLC. Your Honor, what this case comes down to is basically two points. The case arises from the theft of diamonds in a safe deposit box at a branch that was maintained by TD Bank. And none of those valuables were ever recovered. The claims were brought because BAT alleged that TD Bank was grossly negligent in connection with providing an adequate alarm mechanism that it should have provided so that the valuables could have been reported to the police if they were being stolen or in the process of being stolen. So communication lines were ripped and there was nothing to alert the police based on the system that they had in place. But what we really are here for is not the substantive matters of the case, but really more, I would say, technicalities. And the first one is the assignments. BAT is the assignee of claims. And the Court and my adversary has argued that the assignment was nothing more than a power of attorney. When we look at the history of the Second Circuit in connection with such cases, I refer to Judge Kearse, your decision in Advanced Magnetics, Inc., which is very much on point and instructive to this case. In that case, the Court reversed the District Court's opinion in connection with the matter. And this is what Judge Yu held. Number one, it was a power of attorney. And I want to focus on that first because I want to show the difference between that power of attorney and the one that is alleged to be applicable over here, which invalidates, as they say, the assignment. In Advanced Magnetics, Inc., the assignment was a pure power of attorney. And I'll just read what it says. The assigneurs do hereby assign to AMI, that was the plaintiff, the power to commence and prosecute to final consummation or compromise any suits, actions, or proceedings that law or inequity in any court of competent jurisdiction which arise from the above-described claims. There is nothing of the sort in the assignment that's before us in this case. In this case, there was a complete assignment of the claims as well as— But how can you assign something you don't own? Do you agree that the assigneurs in this case did not own and could not show that they had title to the property or the contents of the box? Your Honor, it's a very good question. And under New York law, bailors and this relationship with the safe deposit box is a bailor-bailey relationship under New York law. The bailors have the independent standing to bring claims even if they are not the owners. So the claims are owned by the Bienenstocks, and they, as the baileys, have the claims to assert which have been assigned. But even more than that, we have alleged, and it is included in the pleadings, that the owner also made an assignment, and the owner of the diamonds was a company called Tappet, T-A-P-P-E-T. You mean that's in the amended complaint? That is in one—it's not in the latest amended complaint. It is referred to as well—I'll just refer, Your Honor, to the owner's assignments, all of them, having been provided to the other side in July of 2017. It's at the record of page 5383, paragraph 32 of TD Bank's 56.1 submission. And, in fact, it was used at the deposition of the owner of Tappet, Mr. Seeger. So there was no question that who the owner of the contents were. There's no question that the Bienenstocks, as baileys, had the right to assign claims. They all assigned their claims to BAT. Now, why they did that was because no one wanted to have the specter of people arising later and having competing claims. Oh, you didn't own the diamonds. You did own the diamonds. You were the lessee. They didn't want anything of that nature to come up. And so they all assigned their interests to BAT, LLC, which they had a right to do. And all of that was in the record. It happened years before. The question, again, and this brings me to the second point, Your Honor, which is very important, which is that BAT filed a Fifth Amendment complaint. And the court said that that was not allowed in its discretion. But let's talk about that. First of all, as Judge Keirs points out, again, in the advanced magnetics in case, under Rule 17, which is supposed to be liberally construed, when there is an assignment that's invalidated, you have to give a right to the owners to step in there so that their claims can be preserved, or else you're letting the defendant get away with proverbially murder. Your Honor, I think you also said the same thing in your decision that was recently in June of 2025 in the case of NACL Car Care versus International Association of Bridge Structural, Ornamental, and Reinforcing Ironworkers Local 580. That is reported at 140F4, page 60. Again, the date is June 9, 2025. Now, when is the first time that we could have moved to amend that complaint? All that we had until that time was boilerplate lack of standing. There was nothing specific as required by Rule 9 to say what is the lack of standing that you are claiming. That first arose when TD Bank had their submissions to the court, their letter submissions for summary judgment. And in that submission, that's the first time that they said exactly what their claim is with respect to the assignment. But there's no question that Ott understood that allegedly, you know, I'm not sure how that is relevant here, but that this money and the diamonds, which were significant, were originally given by a woman who was prosecuted in a major health care fraud case and passed away. And so now her children are claiming a right to it. I'm curious, did the government ever claim a right to the diamonds or the cash as part of restitution in the significant criminal case? Absolutely not, because the government knew. Well, did they know that the cash and the diamonds had been stashed away in a deposit box? The diamonds were owned by the company Tappet. Helen Seeger, who Your Honor is referring to, there is nothing in the record that says that she ever owned anything. She was helping her kids get the diamonds. She opened up a bank account for them. That's all she did. So there is nothing in the record, and this is summary judgment, there is nothing in the record except for speculation that says that she owned the diamonds. But that's what they hung their hat on. They said, oh, look at all of this. She was a bad woman. She must have been the one that owned the diamonds. So that's not how we are supposed to proceed on a case of summary judgment. Your Honor, if Your Honor has any other questions, I will reserve the rest for rebuttal. Seeing no further questions, thank you, Counsel. Thank you. You have reserved two minutes for rebuttal. Thank you.  May it please the Court. My name is Andrew Homelsky. I'm here with Jennifer Scarcella. We represent TD Bank. And my fellow defense colleagues have yielded to me their respective time for oral argument. However, they asked me that I tell the Court that their substantive motions were not addressed below. So if this matter gets remanded, they wanted to make sure that I preserved on the record that they would like a hearing on that. Your Honor, I should say to the panel, this case is about the assignments, but it's much more than that. And as alluded to by my colleague, the diamonds, the provenance of the diamonds, and the steps taken by the family members, the Bienenstocks, Mr. Greisman, all matter. And they matter because that's the lens that Judge Pollack used in terms of what is the intent of the assignments. And why are the assignments written the way they're written? And they're written that way, and why did BAT take the actions that BAT took? All of those actions are colored by what happened in this case. So we can talk about the case law, and we will, but all of the cases that Judge Kearse, that you handled, the Sprint case, all of those cases don't have an underlying bad faith. They don't have the underlying issues that this case has. And when you put it together, you realize why the assignments aren't valid. What we have here is three assignments, one from the Bienenstocks. Now, who are the Bienenstocks? The Bienenstocks are a third party who've never met the owners of BAT. They have no idea who Helen Seeger is. They are the son-in-law and daughter of a third party who arranged for the transfer of the box. The Bienenstocks are not bailees or bailors. They have no idea what is going on. They were told to take out a safe deposit box at TD Bank. They were told when to go there. They were told to switch the boxes. They didn't know what's in the box. They didn't know who they were receiving it for. They didn't know how long they were going to hold it. They had none of the elements necessary for a bailee-bailor relationship. What they did was sign a lease agreement to own a box. That is it. And they have testified, and no one disputes, they don't own anything in the box, and they said they didn't open the box, and that is their position. The next assignment is the Tappet assignment. What is Tappet? I wish I knew because they don't know. Tappet is allegedly a holding company that bought the diamonds, but we know that's not true because Tappet was never, there's not a single piece of paper, not a note card, not a matchbook cover, not a sticky that says that the Seegers own Tappet. Nothing. There's one set of documents, and what are those documents? They're from Flushing Bank. Those are, Helen Seeger said she was the president, she opened a bank account, and she washed $10 million through that bank account, the very same money that she stole from her nursing home. But what's important is that Tappet, and now the appellants, argue that Tappet owned the diamonds, and they talk about proof. But as Judge Pollack noted, there's not a single piece of paper that says that Tappet owned the diamonds. There's not an invoice. I mean, the appellants in this case, Mr. A. Seeger and his sister, Hannah Brockfeld, say they gave their mom $4 million each. They don't have a piece of paper. They don't know what bank. They know nothing. This is a scam. What happened was Helen Seeger stashed the diamonds with some person she didn't know, and she switched the boxes. And then that's, you know, this is concealment. This is contraband. This is money laundering. And when the Seegers, who admit they haven't spoken to their mom in decades, realized she died in Rikers Island is when they discovered the diamonds. And they didn't, to your Honor's point. There was investigations done by the Medicare, Medicaid fraud, the ADA trustees, and there were a lot of lawsuits. They did not disclose the diamonds because they now claim they're their diamonds through TAPIT but can't prove any of it. But that's not why we're here. But I wanted to understand, the court, to understand what we're talking about and through that lens because what we're talking about is the assignment from the Bean & Sucks. That is the only assignment that's here. The other assignments are not mentioned in the complaint. And there's four iterations of that complaint. How do you address their argument, counsel, that at the very least the Bean & Stock assignment conferred title to the 2010 lease agreement with TD Bank to Bob? Yes. How does that, why is that not sufficient to confer standing? So the first element is the assignment itself. So if you look at what the exact assignment says, it says, signers hereby assign to S&E all of the rights of S&Ers as to their ownership rights or any other rights whatsoever concerning any items previously contained in the box. They don't assign the contract rights. They assign their ownership rights to what's in the box and they don't have any ownership right to what's in the box because they don't even know what's in the box and they admit they didn't own it. And I'm correct that they conceded in their depositions.  That they did not own the contents of the box. They conceded that they didn't own it, they'd never met Helen Seeger, they'd never met Abe Seeger, they'd never met Hannah Brockfeld, and they had no idea what was in the box. And they only found out after she died and all of this occurred. But the second part is or, or, so it's not and ownership, it's or, any other rights whatsoever concerning any items in the box. So that's not items in the box. That's not the, they signed a lease agreement. That lease agreement is not in the box. That's not an item in the box. They were very clever because they say also in the first whereas that they are the owner of certain claims. They don't say in here that they own the lease agreement, that they're assigning the lease agreement, and they're not doing that very, for a very interesting, for a very, I think, a strategy. And all of this is their strategy. And their strategy was not to talk about the lease agreement because they knew that. Let me give you a hypothetical. If I decided, you know, I don't want to pay for a bank deposit box, but I took all my jewels and I asked my neighbor who I'm very close to to please hold them in their safety deposit box. And then the bank gets robbed and my jewelry is gone. Are you saying that my neighbors can't sue for, let's say they have my jewelry and their jewelry in the box, they can only sue for their jewelry? They can't sue at all. They can sue for the breach of the lease agreement that they signed. There's a lease agreement. And the lease agreement has certain terms and conditions, and they can sue for that. But in this case, which is interesting also, Your Honor. And what are the damages to the breach of that lease agreement? It depends on the terms of the lease agreement. Here, there is no damages for them. They cannot recover because, and in Your Honor's hypothetical, if you looked at the bottom of the contract, it says, you know, you make sure that you're property. So it's not, it's not, and so here it's not to be any type of property. And also there's a requirement of insurance? It says that you should get your own insurance. Well, it's not a requirement, but you should get. You should get your own insurance because we're not insuring this. There is no bailee-bailor relationship in that, when there's a contract, and we cited case law to that effect. But importantly here, it's even worse than Your Honor's hypothetical because there's not only no bailee-bailor relationship, it would go five or six deep, right? Because it's allegedly the Seegers who gave the diamonds to the mom, who gave the diamonds to another woman, who gave the diamonds to the Bean & Stocks, who gave them to TV Bank. This is not a bailee-bailor relationship. So in a situation where, let's assume it's not a break-in, like here, in the middle of the night, and the security system doesn't detect it, but let's say you've got a bank employee who negligently or intentionally allows somebody to go into the box and remove the jewels in my hypothetical. You're saying there's no... I think they could sue for their own... I think your box owner could sue for their own negligence, maybe, maybe not. I don't know what the contract... Whose own negligence? I think they could sue TV... I mean, I think there might be a cause of action for negligence in that case. Against the bank? Against TV Bank's employee under a respondent superior, maybe. I don't know, Your Honor, because I've never seen that. But the rights in this agreement is you pay us money, we give you a box. And we say we don't insure the contents of the box. Well, actually, you've never seen that, but I did have a case while sitting on this court where a flight attendant kept cash in a safety deposit box and the bank couldn't account for it. And she was allowed to sue to recover that on a negligence theory. So that's why I'm exploring what... And I think that there are certain instances where the... I'm running out of time. There are certain instances where people don't pay the rent and TV Bank would drill into their box and take their stuff. They took possession of it, and that's a different... That could be that situation, which is totally different than it is here. In my minute and 46 I have left, I want to make sure that I... They shouldn't address the issue of amendment, which is, as Your Honor noted in Advanced Magnetics, under Rule 17 you allow for the amendment because the amendment would be the same, just moving the names and substituting names. And if you look at the draft complaint, their fifth amended complaint, it's anything but that. It is a complete rewrite of the entire complaint, changing contract claims to tort claims, asking for punitive damages, changing the players, adding facts. It's not a direct substitution. In addition to that, as Your Honor noted in Advanced Magnetics, the factual and legal allegations need to be the same and unaltered. That's not what's happening here. And there has to be no indication of bad faith or an effort to deceive or prejudice the defendants. And here we are severely prejudiced. We have gone through like eight years of discovery. We have filed summary judgment motions. We have waited years. We've done expert disclosures. And they wait now to move it when all along they knew they could have substituted them at any time, years before. And Advanced Magnetics, I mean, they asked to substitute before the motion to dismiss. Here it's eight years later. And I would be also remiss not to add in terms of prejudice that during those eight years we asked for Helen Seeger's information. We asked for information about Helen Seeger getting the diamond. We asked TAPIT for that. And the response was objection, objection, objection. And in the record you'll see counsel saying, don't answer that question, don't answer that question about it. Now they want to make Helen Seeger a direct plaintiff. And I think that's extremely prejudicial. I know I'm out of time, but if you have any further questions, happy to address. Thank you, Counselor. You have two minutes for rebuttal. Thank you. I first want to address this last point. As we point out in our brief, cases within this circuit and appellate courts, federal appellate courts throughout the nation, have said the proper, or at least the most appropriate thing to do, is to wait for the court's decision as to whether the assignment was valid before having an amendment to put in the owner. So if the court decides that there's no need to, there's no need for the amendment. And that's all in our brief. The second point I'd like to make is that with respect to the lease agreement that my adversary referred to, the one they produced, and it's very interesting, was dated July 2012. The rental here took place a year or two before that, and there is nothing in the record that shows that there was any kind of lease agreement, of which my adversary says, other than one that was in effect afterwards. With respect to the diamonds themselves, I'd like to point out that each of the diamonds was GIA certified. There was no one who ever claimed ownership of the diamonds other than Taffet. And that ownership, and Taffet itself, was based on the testimony of Abraham Seeger, who was the principal owner of Taffet. It was uncontroverted, that testimony. And there was no obligation, especially when we're talking about claims that are basically speculation, to have to address those. Helen Seeger, I'd also like to point out, was never convicted of any crime. So this whole scenario is something that was just fabricated and manufactured to this case by TD Bank. Whether she was a good person or not is not the issue. Thank you, Your Honor. Thank you. Thank you to both sides. We will reserve decision on this case. Thank you. Thank you.